FILED
2020 Jun-10  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA,
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FELICITY JONES,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NO:**_____ |
| | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| **OF NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Felicity Jones, and hereby files her Complaint against Life Insurance Company of North America.

## PARTIES

1.　　The Plaintiff, Felicity Jones ("Mrs. Jones"), is an insured under Group Long Term Disability Plan for employees of Hewitt Associates, LLC, identified as Group Insurance Policy LK-980043 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.　　Defendant, Life Insurance Company of North America ("LINA"), is the Administrator of the Plan. Upon information and belief, LINA is a foreign corporation incorporated in the State of Pennsylvania, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mrs. Jones brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by LINA as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mrs. Jones' valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans."  *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Mrs. Jones, as an employee insured for disability, was supposed to be treated as a beneficiary by LINA as a statutory fiduciary. Instead, LINA has breached those duties and victimized Mrs. Jones by

engaging in improper claim handling procedures. As described in more detail below, LINA has clearly engaged in bad faith claim handling and Mrs. Jones, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.     Mrs. Jones is an insured for benefits under the Plan. LINA is the administrator of the Plan. The Plan provides insureds, like Mrs. Jones, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.     At all relevant times, Mrs. Jones was employed by Hewitt Associates, LLC and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under terms and conditions of the Plan.

7.     Mrs. Jones, a woman fifty-four years of age, worked at Hewitt Associates, LLS until her disabilities forced her to stop working on or about September 9, 2011.

8.     Mrs. Jones was employed by Hewitt Associates, LLC as a Customer Service Associate, whose job duties required answering employee's questions and recording employee enrollment in benefits and group insurance programs.

9.     Mrs. Jones' medical disabilities include chronic low back pain secondary to lumbar spondylosis and stenosis, lower extremity pain, abnormal gait and mobility pattern requiring assistive devices, myofascial pain of the bilateral neck and shoulders, asthma, and hypertension. The symptoms of her impairments and the

side effects of the medications and treatment prescribed render Mrs. Jones unable to perform any job.

10.    Mrs. Jones was approved for and began receiving LTD benefits from LINA on March 17, 2012.

11.    Mrs. Jones received continuous LTD benefits from March 17, 2012 through January 19, 2017, totaling nearly five (5) years of continuous benefits,

12.    Mrs. Jones' benefits were approved and paid from March 17, 2012 until March 17, 2014 because LINA determined that she was unable to perform the material duties of her regular occupation; thereafter, LINA continued to provide LTD benefits from March 18, 2014 until January 19, 2017 because it was determined that Mrs. Jones was unable to perform the material duties of any occupation for which she was, or may reasonably become, qualified.

13.    By letter dated January 20, 2017, LINA wrongfully terminated Mrs. Jones' LTD benefits beyond January 19, 2017.

14.    The Plan at issues, as governed by ERISA and relied upon to deny Mrs. Jones' LTD benefits states, in part:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. Unable to perform the material duties of his or her Regular Occupation; and

4

2.  Unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or sickness, he or she is:

1.  Unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and

2.  Unable to earn 80% or more of his or her Indexed Earnings.

15.    Using this test of disability, LINA found Mrs. Jones disabled and approved her LTD benefits for nearly five (5) years as Mrs. Jones' chronic back and extremity pain, limited mobility and abnormal gait, asthma, and hypertension prevented her from performing first the duties of her own occupation, and then those of any reasonable occupation.

16.    However, on January 20, 2017, LINA reversed the course it had maintained for almost five (5) years, terminating Mrs. Jones' LTD benefits. The termination of LTD benefits was based at least in part upon the paid review of Dr. Donald W. Minteer, Jr. ("Dr. Minteer").

17.    At all relevant times, and prior to the termination of Mrs. Jones' benefits, she was under the consistent care of her primary care physician, Dr. Cedric

C. Coleman ("Dr. Coleman").

18.     LINA hired Dr. Minteer, a paid reviewer, to consider Mrs. Jones'
medical file and whether Mrs. Jones continued to meet the Plan's definition of
disability.

19.     In his reported dated January 19, 2017, Dr. Minteer assessed that Mrs.
Jones was mildly to moderately functionally limited with regard to standing,
walking, bending, lifting, carrying, pushing, and pulling but determined that Mrs.
Jones' impairments would not preclude sedentary work.

20.     Dr. Minteer reported that Mrs. Jones' treating providers had not
provided opinions on work status or level of functional limitation, and yet made no
attempt to contact Mrs. Jones' physicians for clarification.

21.     In its January 20, 2017 denial, LINA utilized a Transferable Skills
Analysis, which considered only Dr. Minteer's assigned restrictions and limitations,
to deem Mrs. Jones capable of full-time sedentary work.

22.     LINA relied on the paid reviewer's opinion over the opinion of Mrs.
Jones' treating providers, and by letter dated January 20, 2017, wrongfully
terminated Mrs. Jones' LTD benefits.

23.     At the time LINA terminated the LTD benefits on January 20, 2017, it
had no information, from Dr. Minteer's paid review or otherwise, that altered in
some significant way its previous decision maintained for almost five years to pay

LTD benefits to Mrs. Jones.

24.     At the time LINA terminated the LTD benefits on January 20, 2017, it had no information, from Dr. Minteer's paid review or otherwise, that showed Mrs. Jones' medical conditions had improved, when in fact, Mrs. Jones' treating physicians opined that her condition remained debilitating.

25.     In an email dated January 30, 2017, Mrs. Jones appealed the denial of her LTD benefits, noting that she was unable to work any job, could not sit upright for any length of time due to chronic back pain, and experienced negative side effects including incoherence from her prescribed medications.

26.     LINA hired Dr. Roger Belcourt ("Dr. Belcourt"), a paid reviewer, to consider Mrs. Jones' medical file and whether Mrs. Jones continued to meet the Plan's definition of disability. Dr. Belcourt was paid One Thousand Three-Hundred Twenty-Five Dollars and Twenty-Five Cents ($1325.25) to offer the opinion that Mrs. Jones was not disabled under the Plan.

27.     Despite acknowledging moderate functional limitations secondary to difficult-to-control asthma and shortness of breath as well as lumbar stenosis in the setting of morbid obesity limiting functional movement and endurance, Dr. Belcourt nevertheless asserted that Mrs. Jones was capable of performing full-time work activities for forty hours per week.

28.     Dr. Belcourt made only cursory attempts to contact Mrs. Jones' treating

physicians, making only two phone calls to Dr. Coleman's office on March 29, 2017 and March 30, 2017; additionally, despite instructions to allow forty-eight hours for a response following a second contact attempt, Dr. Belcourt finalized and submitted his review to LINA on March 31, 2017.

29.     Working under the same instructions, Dr. Belcourt attempted to call Dr. Coleman's office on April 25, 2017 and April 26, 2017 before submitting a premature addendum to LINA on April 27, 2017. For this addendum, Dr. Belcourt was paid One Hundred Forty-Two Dollars and Fifty Cents ($142.50).

30.     Dr. Belcourt's haste necessitated a third addendum, as Dr. Coleman responded on April 28, 2017 that Mrs. Jones experienced difficulty sitting or standing for prolonged periods of time, was unable to even maneuver within the office for examination, had difficulty bending and squatting, and that even a sedentary job would be difficult for Mrs. Jones as she could not do anything for more than several hours due to the severity of her spinal stenosis. Incongruously, Dr. Belcourt declared this opinion to be "mostly in line" with the restrictions assigned in his review and opined that his opinion remained unchanged.

31.     On May 16, 2017, LINA upheld the denial of Mrs. Jones' LTD benefits, citing Dr. Belcourt's opinion and a subsequent Transferable Skills Analysis as evidence.

32.     LINA failed to take Mrs. Jones' non-exertional impairments into

consideration in its May 16, 2017 denial; for example, while restrictions and limitations of standing and walking only twenty minutes with alternating sitting, walking, and standing, as well as constant sitting with the ability to change positions for comfort were noted, the excessive time off-task elicited by frequent changes in position was not considered.

33.    Dr. Coleman referred Mrs. Jones to Dr. Michael Osei ("Dr. Osei") on September 13, 2017, where an Oswestry Low Back Pain Disability Questionnaire score of 74% placed Mrs. Jones in the "crippled" range. Dr. Osei further noted that Mrs. Jones' spinal stenosis limited her activities of daily living, had caused progressive disability, and was accompanied by generalized weakness.

34.    On October 6, 2017, Dr. Osei provided a statement which recounted Mrs. Jones' extensive treatment and diagnostic history for chronic back pain and noted impairments including: unsteady gait preventing her from walking more than a few seconds; decreased upper extremity strength with moderately reduced ability to write or sign her name; inability to carry over two pounds for any length of time; the necessity for a cane or walker for ambulation; inability to sit for more than one hour or stand for more than thirty minutes; and restriction to short journeys under thirty minutes. Dr. Osei stated that "in my opinion Mrs. Jones is permanently disabled as a result of her chronic pain from lumbar spinal stenosis and radiculopathy" and that "it is likely that the extent of this back pain would prevent

her from doing any activities that required more than minimal exertion. Her back pain is likely to continue or worsen as she ages."

35.     LINA hired Dr. Greg Smith ("Dr. Smith") and Dr. Weiran Wu ("Dr. Wu"), paid reviewers, to consider Mrs. Jones' medical file and whether Mrs. Jones continued to meet the Plan's definition of disability.

36.     Despite reviewing Dr. Osei's notes, as well as a recent EMG/NCV showing bilateral S1 nerve root compression and an MRI showing multilevel lumbar stenosis and spondylosis, Dr. Smith concluded that the treating physician's opinion was not well supported by the record and inconsistent with evidence in the claim file.

37.     Neither Dr. Smith nor Dr. Wu attempted to contact any of Mrs. Jones' treating physicians for clarification of her symptoms or impairments.

38.     LINA again denied Mrs. Jones' LTD benefits on December 6, 2017, relying primarily upon the opinions of their paid reviewers, who never saw or spoke with the claimant and had no contact with Mrs. Jones' treating physicians, to support this decision.

39.     After receiving the notice of denial, Mrs. Jones and her husband contacted LINA on December 12, 2017, voiced concerns of a "rubber stamp denial," and noted unsuccessful attempts by Mrs. Jones' treating doctors to contact LINA.

40.     In response to these concerns, LINA referred Mrs. Jones for an

Independent Medical Examination with Dr. James W. Atchison ("Dr. Atchison") on January 24, 2018. Dr. Atchison observed and evaluated difficulty with transitional movements and gait, limited range of motion of the spine and lower extremities, and the necessity of an assistive device such as a cane or walker, all of which limited Mrs. Jones' ability to sit, bend, stoop, crouch, climb, kneel, stand, walk, balance, lift, carry, or use the upper extremities when using a cane or walker.

41.     A Transferable Skills Analysis was performed on February 7, 2018 utilizing only Dr. Atchison's restrictions and limitations, and on February 9, 2018 LINA upheld its decision to deny benefits to Mrs. Jones.

42.     To dispute the denial of her LTD benefits, Mrs. Jones herself arranged for an Independent Medical Evaluation with Dr. Norman Aliga ("Dr. Aliga") on July 19, 2018.

43.     Dr. Aliga observed limited bilateral upper extremity range of motion and strength, impaired vibration sensibility from the calves and distally, difficulty getting up from the examining table, and tremulousness of the upper and lower extremity muscles; subsequently, Dr. Aliga diagnosed generalized weakness and decreased endurance from deconditioning and lumbar spondylosis and stenosis impairing the ability to exercise and contributing to this deconditioning, and stated "I think this patient at the moment is temporarily totally disabled from any occupation in view of her overriding pain experience as well as deconditioning and

weakness and impaired endurance."

44.    In response, LINA referred Mrs. Jones' claim file for medical review by its paid reviewers, Dr. Joseph Rea ("Dr. Rea") and Dr. Devendra S. Thakur ("Dr. Thakur").

45.    In his September 14, 2018 review, Dr. Rea noted an "appreciation for an extreme degree of general debility and decondition" in prior examinations by Dr. Atchison and Dr. Aliga and reported Mrs. Jones' back pain to be supported by consistent long-term symptoms and correlating physical findings and diagnostics. However, Dr. Rea deviated from Dr. Aliga's findings by asserting that, "despite considerable debility and behavioral manifestations of that debility," he found Mrs. Jones to remain capable of performing work activity.

46.    Neither Dr. Rea nor Dr. Thakur were instructed to contact Mrs. Jones' treating providers for information regarding her conditions, restrictions, or limitations.

47.    Primarily utilizing Dr. Rea's review, and in contradiction of Mrs. Jones' own treating physicians' opinions, LINA rendered a final denial of LTD benefits to Mrs. Jones on September 26, 2018.

48.    LINA did not allow Mrs. Jones an opportunity to review and respond to Dr. Rea's or Dr. Thakur's paid reports, as Mrs. Jones was only informed of their involvement and LINA's reliance upon their opinion in the letter terminating

benefits dated September 26, 2018. Rather than providing Mrs. Jones an opportunity to respond, LINA informed Mrs. Jones that she could "bring a legal action for benefits..."

49.     Following this ultimate denial, the Social Security Administration recognized Mrs. Jones' ongoing and permanent disability and awarded Social Security Disability benefits on September 5, 2019.

50.     As of this date, Mrs. Jones has been denied benefits rightfully owed to her under the Plan.

51.     Mrs. Jones has met and continues to meet the Plan's definition of disabled.

52.     Mrs. Jones has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

53.     LINA's refusal to pay benefits has caused tremendous financial hardship on Mrs. Jones.

## STANDARD OF REVIEW

54.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

55.     When discretionary authority is clearly granted and the insurer of an

ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

56.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may have adjudicated Mrs. Jones' claim. Therefore, the Court should review Mrs. Jones' claim for benefits under a *de novo* standard.

57.     Upon information and belief, LINA evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

58.     LINA has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mrs. Jones' claim for benefits should be reviewed by this Court under a *de novo* standard.

59.     In the alternative, if the Court finds that LINA is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as LINA's decision to deny Mrs. Jones' LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

60.     LINA has wrongfully denied LTD benefits to Mrs. Jones, in violation of the policy provisions and ERISA, for the following reasons:

(a) Mrs. Jones is totally disabled, in that she is unable to perform the material duties of any occupation for which she is, or may reasonably become, qualified based on education, training, or experience;

(b) Mrs. Jones is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) LINA approved and paid LTD benefits to Mrs. Jones from March 17, 2012 to March 17, 2014 because LINA determined that she was unable to perform the material duties of her regular occupation, and thereafter paid benefits between March 18, 2014 and January 19, 2017 as LINA found Mrs. Jones incapable of performing the material duties of any reasonable occupation. LINA does not identify any particular reason for choosing the January 19, 2017 termination date and appears to have arbitrarily decided that Mrs. Jones would have the ability to return to work the following day, which is in stark contrast to the opinions of her treating physicians;

(d) LINA paid Mrs. Jones' claim for almost five years before

unreasonably terminating her claim. Courts have held that claim handling procedures where a claimant is paid for a substantial amount of time only furthers the claimant's argument that their denial was simply manufactured. See *Paquin v. Prudential Ins. Co. of America*, 16-CV-02142-RBJ 2017 WL 3189550 (D. Colo. July 26, 2018);

   i. In *Paquin v. Prudential Ins. Co. of America*, the claimant was awarded benefits for eleven years before he was denied. The court held that, because the defendant "ignored the clear weight of evidence regarding [the claimant's] disability," the claimant's condition failed to improve over the eleven-year period, and the claimant's treating physicians opined that his condition would not improve, defendant's determination that the claimant was not disabled was completely unreasonable. *Id.*

   ii. In this case and similar to *Paquin*, Mrs. Jones was awarded benefits under the Plan for nearly five years. Like *Paquin*, LINA absurdly determined that, despite the clinical evidence gathered over this extended period of time which proved Mrs. Jones to remain disabled and unimproved in her conditions, LINA rendered a manufactured denial of benefits. Thus,

Hartford's decision to terminate Mrs. Jones' benefits was completely unreasonable.

(e) LINA failed to accord proper weight to the evidence in the administrative record showing that Mrs. Jones is totally disabled;

(f) LINA's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(g) LINA failed to allow Mrs. Jones a right to access information upon which it relied to make a final determination, and failed to allow Mrs. Jones an opportunity to respond to said information, before it made a final determination on her claim for LTD benefits;

(h) LINA wrongfully denied Mrs. Jones a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking, instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(i) LINA failed to give proper weight to Mrs. Jones' own accounts regarding the debilitating effects of her pain;

(j)  LINA ignored the records and opinions of Mrs. Jones' treating
physicians which show that Mrs. Jones is totally disabled, and
instead largely based its decision to deny benefits on its internal
review by LINA staff members and its paid reviewers, who had
never seen or treated Mrs. Jones, some of which never spoke with
her treating physicians about the nature of her disability, and who
were not as qualified as Mrs. Jones' treating physicians to
formulate opinions regarding the nature and extent of her
disability. An examination carried out by another paid reviewer
was also utilized, who likewise never spoke with Mrs. Jones'
doctors and was not as qualified as her treating physicians to
evaluate her disability;

(k) LINA failed to exercise reasonable flexibility in its claims review
process to assure Mrs. Jones a full, fair review, well-reasoned, and
principled of her claim;

(l)  LINA administered Mrs. Jones' claim for LTD benefits while
acting under an inherent and substantial conflict of interest in that
LINA served as both fiduciary of and funding source for the Plan,
and placed its own pecuniary interests above Mrs. Jones' interests
in wrongfully terminating her LTD benefits and failing to

18

administer the Plan as an impartial decision-maker, free of such

conflict of interest, would;

(m)    LINA made erroneous interpretations of some evidence in

violation of its obligation to discharge its duties with care,

prudence, skill, and diligence;

(n) LINA acted in bad faith by denying Mrs. Jones's claim based upon

the inability of LINA's paid reviewers to find Mrs. Jones disabled,

and otherwise failed to administer the Plan honestly, fairly, and in

good faith, and to at all times act in Mrs. Jones' best interests;

(o) LINA terminated Mrs. Jones' benefits without the support of any

new information that altered in some significant way the previous

decision over almost five years to pay LTD benefits to Mrs. Jones;

(p) LINA terminated Mrs. Jones' benefits without the support of any

new information that showed improvement in Mrs. Jones' medical

condition, when in fact her treating physicians opined that her

condition continued to deteriorate as it had for several years;

(q) LINA failed to support the termination of benefits with substantial

evidence;

(r) LINA imposed a standard not required by the Plan's provision, by

requiring objective evidence of Mrs. Jones' subjective medical

conditions where such evidence cannot be reasonably provided;

(s) LINA denied Mrs. Jones' claim for a lack of objective medical evidence when Mrs. Jones has provided ample subjective and objective evidence of a disability and LINA has neither identified any objective evidence that Mrs. Jones could have supplied to support the claim;

(t) LINA failed to consider Mrs. Jones' non-exertional limitations cause by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence, and pace when performing the material duties of any occupation;

(u) LINA's termination of Mrs. Jones' LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mrs. Jones' treating physicians;

(v) LINA wrongfully denied Mrs. Jones' LTD benefits in such other ways to be shown through discovery and/or hearing.

61.     As a result of the foregoing, the relief to which Mrs. Jones is entitled includes: (1) monthly LTD income benefits to Mrs. Jones, (2) payment of back benefits from January 19, 2017 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress LINA's

practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) and award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

62.    Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

63.    At all times relevant to this action, Mrs. Jones was a participant of the Plan underwritten by LINA and issues to Hewitt Associates, LLP and was eligible to receive disability benefits under the Plan.

64.    As more fully described above, the termination and refusal to pay Mrs. Jones' benefits under the Plan for the period from at least on or about January 19, 2017 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mrs. Jones constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.    A judgment ordering the applicable standard of review in this case is *de novo*;

2.      A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying his LTD benefits owed to him through the Plan;

3.      In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.      Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mrs. Jones' LTD benefits; that Mrs. Jones is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.      Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.      A judgment ordering Defendant to pay Mrs. Jones' LTD benefits from January 19, 2017 through the date judgment is entered herein, together with pre-

judgment interest on each and every such monthly payment through the date of judgment;

      7.     An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

      8.     For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 10th day of June, 2020.

*/s/ Peter H. Burke*            
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Felicity Jones*

**<u>PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:</u>**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104